**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WILLIAM HUEBBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| OKLAHOMA CASTING CO., an | ) |
| Oklahoma corporation;  LEGEND | )   NO. CIV-06-306-D |
| LIGHTING; GARY SMITH, individually | ) |
| and as officer, director, shareholder, | ) |
| proprietor and employee of Oklahoma | ) |
| Casting Co.; BLACK FOREST DECOR, | ) |
| L. L.C., an Oklahoma limited liability | ) |
| company; JASON DUPUS, individually and | ) |
| as member, proprietor and employee of Black | ) |
| Forest Decor, L. L. C., | ) |
| | ) |
| Defendants. | ) |

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment [Doc. No.  100],

seeking judgment on three of the copyright infringement claims asserted in Count I of the Amended

Complaint and on the breach of licensing agreement claim in Count II.   Defendants have filed a

joint response to the Motion.[1]

I. Background:

Plaintiff brought this action to enforce his ownership of copyrights for numerous sculptures

and  designs depicting animal themes.  He alleges that Defendants Oklahoma Casting Co. ("OCC"),

Legend Lighting ("Legend"), and  Gary Smith ("Smith")[2] have infringed his copyrights, and are

---

[1]Defendants have also filed a motion seeking partial summary judgment [Doc. No. 101].  That motion is addressed in a separate order.

[2]The Amended Complaint also named Black Forest Decor, L.L.C. and Jason Dupus as defendants; however, the parties filed a Stipulation of Dismissal [Doc. No. 62] in which Plaintiff's claims against these two defendants were

liable pursuant to 17 U. S. C. § 501.  He also alleges Defendants have  breached  certain licensing

agreements, and he asserts a claim for unfair competition/false designation of origin under the

Lanham Act, 15 U. S. C. § 1125(a) ("Lanham Act").

 Plaintiff is a New York sculptor whose works include designs depicting animals; most are

anthropomorphic depictions showing the animals  wearing human clothing.  Certain of these designs

have been incorporated in lighting fixtures, candle holders, and similar decorative items which he

has created and marketed since 1987.   He contends these are widely recognized and highly regarded

in the lighting fixture industry, and he has obtained numerous registered copyrights for specific

designs as well as for several series of items depicting a specific animal.  Plaintiff also designs and

manufactures chandeliers; some of these incorporate his copyrighted designs, and others are the

subject of separate copyrights.

OCC is an Oklahoma corporation which manufactures gift items and decorative accessories,

including lighting fixtures, which are marketed to the gift, furniture and interior design industries.

Legend is not a corporation or separate entity, but is a trade name for OCC's chandelier product line.

 Defendant Smith is an owner, shareholder and operator of OCC.

Plaintiff alleges that Defendants infringed his copyrights by copying  his designs and by

manufacturing and selling lighting fixtures and other items incorporating the infringed material.

Plaintiff also alleges that, in 1999, he granted certain  licenses to Defendants; these authorized  them

to make and sell reproductions of some of his copyrighted sculptures in exchange for payment of

royalties to Plaintiff.   He alleges Defendants breached the licensing agreements by  failing to pay

royalties.  He further alleges that the infringing items manufactured and marketed by Defendants are

---

dismissed without prejudice.

likely to deceive prospective customers into believing the items have their origin with Plaintiff, and he contends their continued marketing of those items constitutes a false designation of origin in violation of the Lanham Act. Plaintiff seeks permanent injunctive relief as well as damages, costs and fees.

II. Summary judgment standard:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, the nonmoving party must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him. *Id.* Upon review of a summary judgment motion, the Court must view the facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

III. Copyright infringement claims:

The specific copyrights which are the subject of Plaintiff's summary judgment motion are: 1) the "Old Fox Series," Certificate of Copyright Registration No. VA 799-892, filed in July 1996; 2) the "Server Series," Certificate of Copyright Registration No. VA 742-025, filed on September 12, 1995; and 3) the "Old Monkey" sculpture, Certificate of Copyright Registration No. VA-721-919, filed on March 1, 1995.[3] The record before the Court includes the copyright registration

---

[3]In his motion, Plaintiff initially also sought judgment on his infringement claim based on the "Three Old Monkey Chandelier," Certificate of Copyright Registration No. VA-756-088, filed on September 12, 1995. However, at Plaintiff's request, that claim was withdrawn from his motion for partial summary judgment. *See* February 28, 2008 Order [Doc. No. 109]. After the parties completed briefing the summary judgment motions, Plaintiff filed a motion [Doc.

certificates naming Plaintiff as the author of each copyrighted item; these are accompanied by photographs showing the copyrighted items.  Plaintiff's Exhibits 1 through 3.  It is not disputed that each copyrighted item marketed by Plaintiff displays his name.

Plaintiff's sculptures are utilized in decorative items including, *inter alia*, electric wall sconces, chandeliers, and candle holders.   Defendants do not dispute that they also  manufacture and market decorative items depicting animals and that these items include sconces, chandeliers, and candle holders.   The parties agree that, in 1998, Defendants were marketing items which Plaintiff believed infringed his "Old Fox" copyrighted design; Plaintiff demanded that they cease doing so. It is also not disputed that, to resolve that dispute, Defendants paid amounts to Plaintiff as royalties for the items they manufactured and sold.  The parties then executed  licensing agreements whereby Defendants were authorized to produce and market some of Plaintiff's copyrighted items; Defendants agreed to account to Plaintiff for their sales of items covered by the licensing agreements and to pay  royalties on those sales. The licensing agreements were executed on June 15, 1999 (the "1999 Agreements").   Plaintiff's allegations regarding the 1999 Agreements are discussed in more detail, *infra.*

A.  Essential elements of copyright infringement claims:

---

No. 117] to amend the Amended Complaint to include the "Three Old Monkey Chandelier" copyright in his infringement claims; Plaintiff states that this copyright was inadvertently omitted from those listed in his Amended Complaint.  Plaintiff contends that Defendants will not be prejudiced by the inclusion of this copyright claim, as the parties have conducted discovery on the claim.  Defendants oppose the requested amendment; however, their argument is directed primarily at the merits of Plaintiff's claim regarding the "Three Old Monkey Chandelier" rather than the propriety of an amendment.   Having reviewed the evidence in the record, the Court concludes that the parties have conducted this litigation in a manner reflecting that the "Three Old Monkey Chandelier" copyright is among those  which Plaintiff believes has been infringed by Defendants.  The record reflects that it was the subject of deposition questions, and it is depicted in the exhibits submitted by the parties.    Under the circumstances, Defendants will not be prejudiced by the formal addition of a specific infringement claim which has been at issue throughout this litigation.  Accordingly, the motion to amend [Doc. No. 117] will be granted by separate order.   The claim of infringement of this copyright is not, however, considered in connection with the parties' summary judgment motions because it has been withdrawn from consideration.

To prevail on his copyright infringement claims, Plaintiff must establish that 1) he possesses valid copyrights and 2) Defendants copied protectible elements of the copyrighted works. *Country Kids 'N City Slicks, Inc.*, 77 F. 3d 1280, 1284 (10th Cir. 1996) (citing *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U. S. 340, 361 (1991) and *Gates Rubber Co. v. Banco Chem. Indus., Ltd.,* 9 F. 3d 823, 831 (10th Cir. 1993)).

To possess a valid copyright, Plaintiff must be the owner of the work at issue. Proof of ownership generally requires proof that Plaintiff is the "author" of the works, as copyright ownership "vests initially in the author or authors of the work." 17 U. S. C. § 201(a). "As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Community for Creative Non-Violence v. Reid*, 490 U. S. 730, 737 (1989) (citing 71 U. S. C. § 102).

1. Ownership of the copyrights:

In this case, Defendants contend that Plaintiff is not entitled to judgment on his "Old Fox," "Server Series" or "Old Monkey" copyright infringement claims because Plaintiff is not the "author" of the three copyrighted works.[4] Defendants argue the evidence shows the copyrighted designs were created by two independent contractors, Susan Takacs ("Takacs") and an individual known as Yuri.[5] Where ownership of a copyright is disputed, the burden of proving its validity rests with the party claiming ownership. *Autoskill v. Nat'l Educational Support Systems, Inc.*, 994 F.2d 1476, 1487 (10th Cir. 1993).

---

[4]In their partial summary judgment motion, Defendants contend that Plaintiff also cannot recover on his other copyright infringement claims because he cannot establish the essential element of ownership of the works covered by those copyrights. That contention is addressed in the Order ruling on Defendants' motion.

[5]The record reflects that Yuri's surname is not known by the parties.

Plaintiff does not dispute that Takacs and Yuri assisted him in the sculpting of the designs at issue; however, he contends that their involvement does not impact his ownership of the copyrights because it constituted "works made for hire," within the meaning of the Copyright Act ("Act").  According to the Act:

> In the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title, and, unless the parties have expressly agreed otherwise in a written instrument signed by them, owns all of the rights comprised in the copyright.

17 U. S. C. § 201(b). A work is "for hire" if it constitutes:

> (1) a work prepared by an employee within the scope of his or her employment; or

> (2) a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire.

17 U. S. C. § 101.

Because the Act does not define "employee" or the "scope of employment," the Court must apply common law  agency principles to determine if the work constitutes work for hire under the Act.  *Community,* 490 U.S. at 750-51. In doing so, the Court should consider the following factors: 1) the hiring party's right to control the manner and means by which the product is accomplished; 2) the skill required; 3) the source of the instrumentalities and tools; 4) the location of the work; 5) the duration of the relationship between the parties; 6) whether the hiring party has the right to assign additional projects to the hired party; 7) the extent of the hired party's discretion over when and how long to work; 8) the method of payment; 9) the hired party's role in hiring and paying assistants; 10) whether the work is part of the regular business of the hiring party; 11) whether the hiring party is in business; 12) the provision of employee benefits; and 13) the tax treatment of the

hired party.  *Id.* at 751-52 (citing Restatement (Second) of Agency § 220(2)).  "No one of these factors is determinative."  *Community*, 490 U.S. at 752.

In this case, Defendants contend Takacs was not an employee because Plaintiff described her as an independent contractor in his answers to interrogatories and in his deposition.  Plaintiff's interrogatory answers, Defendants' Ex. A; Plaintiff's dep., Defendants' Ex. B, p. 126, lines 24-25("Plaintiff's dep.").   However, as Plaintiff points out, he also testified that, at all times, he considered the work performed by Takacs as  work "for hire."  Plaintiff's dep., p. 127, lines 11-17.   As Plaintiff also correctly notes,  the fact that the parties used the terms "employee" or "independent contractor" is not dispositive.  *In re Shulman Transport Enterprises, Inc.*, 744 F.2d 293, 295 (2d Cir. 1984); Restatement (Second) of Agency § 220 cmt. m (1958). Moreover, the term "employee" in the Act is not limited "only to formal, salaried employees."  *Community*, 490 U.S. at 743 n. 8.   Instead, to determine whether the individual is an employee or an independent contractor,  "all of the incidents of the employment relationship must be assessed and weighed with no one factor being decisive."  *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318, 319 (1992).  Thus, to determine whether the work performed by Takacs and Yuri was work for hire within the meaning of the Act, the Court must apply the principles of agency law to determine if they were working as employees or independent contractors.

a.  Takacs:

The undisputed evidence reflects that Takacs worked for Plaintiff for approximately 13 years. It is not disputed that she was paid at an hourly rate, and received no employee benefits; no federal or state taxes were withheld from her compensation, and she was provided a Form 1099 at the end of the year.  She initially worked on a part-time basis, and later typically worked a full eight-

hour day.  Takacs' first job as an artist was her position with Plaintiff; previously, she had attended several art schools, but did not specialize in any medium.  Takacs deposition, Defendants' Ex. F ("Takacs dep."), p. 6.  Initially, her work for Plaintiff involved silk screen printing.  *Id.*  She had no previous experience as a sculptor, and Plaintiff taught her sculpting while she worked for him. Plaintiff dep.,  p. 131, lines 22-25.

According to Takacs, all of  the work she performed was assigned by Plaintiff; he told her what he wanted, and paid her for doing what he asked her to do, and she did not sell him independent pieces that she had created.  Takacs dep., p.106, lines 22-25.   All of her work was performed at Plaintiff's studio.  *Id.*, p. 14, lines 5-9.  The tools, clay, and all other materials she used were provided by Plaintiff.   Takacs dep., p. 96, lines 17-25.

During the time Takacs worked for Plaintiff, he was engaged in creating and manufacturing the animal-themed sculptures and decorative items which are the subject of this lawsuit.  Takacs estimated that she worked on more than 100 of these items; Plaintiff does not dispute that estimate. Takacs was paid an hourly rate rather than a fee for the item sculpted.  Takacs dep., p. 15, lines 7-9. It is not disputed that all work performed by Takacs was related to Plaintiff's business.

 Takacs described her work as sculpting from clay the animals' heads, faces, and clothing. She testified that Plaintiff would tell her what he wanted in each sculpture.  Plaintiff made an armature, or metal framework, of the animal posed in the position Plaintiff wanted; he then instructed Takacs to  sculpt clay on the armature in the manner requested by Plaintiff.  Takacs dep., p. 43, lines 2-19.  Plaintiff told Takacs  in detail exactly what clothing to put on the animal, and the pose was determined by Plaintiff because Takacs could not change the armature.  *Id.*, p. 32, lines 1-9.  Based on the photographs she obtained, Takacs selected the facial expression and features as

8

well as the texture of the fur on each animal; Plaintiff did not expressly dictate the features he wanted.

Although Takacs did not recall that Plaintiff asked her to change any expression or features on her sculptures, Plaintiff testified that he made some changes. Although he seldom criticized her work, he examined it each night after she left the studio, and made changes to some pieces. According to Plaintiff, he altered some of the facial features to achieve a more pleasant or whimsical expression. Plaintiff dep., p. 129, lines 22-25; p. 130, lines 1-22. If he thought the piece needed some changes, he did them himself because he did not want to hurt her feelings. *Id.*, p. 129, lines 1-6. Takacs believed Plaintiff did not always tell her about changes he made because he did not like to be critical. Takacs dep., p. 105, lines 20-25.

According to Takacs, when Plaintiff told her what animal he wanted depicted in a sculpture, she researched photographs of animals to obtain a likeness. Takacs dep., p. 30. For example, in the sculptures described as the "Old Fox Series," Plaintiff gave her an armature of a fox posed in a certain manner; she would utilize a photograph of a fox to sculpt the head and facial features. Then Plaintiff would tell her what clothing he wanted placed on the fox; he chose a specific coat, including the length and drape of the coat, as well as a vest, tie or other items of clothing. *Id.*, p. 29, lines 3-11. Plaintiff gave her instructions while she was sculpting; however, Takacs testified that he was not very critical. Takacs dep., p. 36, lines 3-25. She decided how to sculpt the facial features and the fur on each animal based on the photographs she obtained. However, Plaintiff always had the final say as to what each piece looked like; he had the right to change all of the pieces she sculpted. Takacs dep., p. 105.

In his deposition, Plaintiff described the process in the same manner as Takacs. He testified

that he made the armature or metal frame for each sculpted piece, posing it in the manner he wanted; he would then tell Takacs what animal he wanted, how it was to be positioned,  and the details of its clothing.  Plaintiff's dep., p. 128.  When a piece was sculpted and finalized, a fiberglass mold was made of that piece.  *Id.*,  p. 128, lines 5-25.    In some cases, he used the same mold of the animal for other items using the same theme, but the mold was altered to change the animal's pose;  Takacs would sculpt the clay on the altered mold and add any portions requested by Plaintiff .  Plaintiff's dep., p. 134-135.  For example, the "Old Fox Series" includes several items depicting a fox wearing a long coat, vest and tie; one sculpture is a sconce with the standing fox's arms outstretched so that each arm is a candle holder.  Another fox is depicted sitting on a log.  The fox character was also used to form a sculpture in which the fox is seated on a ball, with his arms holding a tray (the "Fox Server").   The clothing on each fox is different.

In her deposition, Takacs explained her working relationship with Plaintiff regarding all other animals and designs on which she worked.  It cannot be disputed that  her working relationship with Plaintiff regarding the "Old Fox Series" was the same for all of the other sculptures on which she worked.[6]

In addition to sculpting the animals, Takacs performed some of the work on chandeliers. She testified that Plaintiff made the base and form of the chandelier, and he decided what animals to place on each.  She sculpted some of the animals which were placed on the chandeliers, and she sometimes sculpted the leaves, branches or other decorative items on the chandeliers.

Applying the factors discussed in *Community* to the evidence in the record, the Court

---

[6]Because Takacs was questioned in detail about each sculpture on which she performed work, the specific pages of deposition testimony are not cited; however, the deposition transcript reflects that their working relationship remained the same.

concludes that Takacs is properly considered an employee and was not an independent contractor. In fact, the only factors which typically apply to an independent contractor are the absence of employee benefits and the lack of withholding for tax purposes.  All of the work she performed was completed at Plaintiff's studio, and he provided all tools and supplies.  He assigned the work she was to perform, and had the right to alter any of her work.  He built and provided to her the armature, dictating the pose of each animal sculpture, and he determined the details of the clothing and overall look of the sculpture.  She did not present an independent work to him for sale; instead, she regarded her work as being performed for his business.

Even if Takacs was considered an independent contractor and the author of the copyrighted work, however, she has assigned all rights, including the right to pursue this infringement action, to Plaintiff.   Plaintiff has submitted to the Court a copy of the written assignment which was not executed until after this lawsuit was filed.  By separate Motion [Doc. No. 116], Plaintiff asks the Court to consider the executed assignment as part of the summary judgment record.  Defendants oppose that motion; however, their brief in opposition addresses the validity of the assignment rather than the propriety of including it in the summary judgment record.  Because Defendants have raised the issue of copyright ownership and have specifically challenged Plaintiff's ownership rights based on Takacs' work, the issue is properly considered in connection with their motion.[7]  Accordingly, the assignment will be considered as part of the record.  The issue is whether the assignment validly conveys ownership of the copyrights at issue to Plaintiff so that he may pursue the infringement claims asserted in this action.

It is well settled that the owner or author of a copyright may assign his interests to another

---

[7]The Motion for Leave to File Assignment of Copyright Agreement for Consideration as Part of the Summary Judgment Record [Doc. No. 116] will be granted by separate order.

11

party.  *See Davis v. Blige*, 505 F. 3d 90, 99 (2d Cir. 2007) (citations omitted).  "An owner may also convey his interest in prosecuting accrued causes of action for infringement." *Id.* (citing *ABKCO Music*, *Inc*. *v. Harrisongs Music, Ltd.*,  944 F.2d 971, 980 (2d Cir. 1991) and *Prather v. Neva Paperbacks, Inc.*, 410 F.2d 698, 700 (5th Cir.1969) (noting the effectiveness of an assignment of accrued causes of action for copyright infringement)).  However, "if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them." *ABKCO,* 944 F.2d at 980; *see also Fisher v. United Feature Syndicate, Inc.*, 37 F. Supp. 2d 1213, 1223 (D. Colo. 1999).  Thus, causes of action which accrued prior to the assignment "can accompany the assignment and confer standing for those prior causes of action upon the assignee." *Infodek, Inc. v. Meredith-Webb Printing Company, Inc.*, 830 F. Supp. 614, 619 (N.D. Ga. 1993). To effectively assign the right to pursue an infringement claim which accrued prior to the executed assignment, however, the assignor must explicitly transfer the causes of action to the assignee. *Fisher*, 37 F. Supp. 2d at 1223 (citing *ABKCO*, 944 F.2d at 980); *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982).

The assignment executed in this case satisfies these requirements.  Takacs expressly assigns to Plaintiff all authorship rights she may have in the copyrights at issue. Schedule A of the Assignment expressly lists all certificates of copyright registration in which she may claim an ownership interest.  Furthermore, she explicitly assigns the right to prosecute infringement actions, including the specific infringement claims which are the subject of this lawsuit.  *See* Assignment, pp. 3-4. She expressly identifies  this lawsuit and the infringement claims asserted herein.  *Id.* at p. 4.  Accordingly, the Court concludes that Takacs' assignment to Plaintiff is a valid assignment of both her ownership rights and the right to pursue the specific infringement claims asserted in this

lawsuit.

Defendants argue, however, that the assignment is invalid  because it was executed more than 10 years after the copyrights at issue were registered, several years after the alleged infringement occurred, and two years after this lawsuit was filed.    Courts considering this contention have held that an assignment subsequent to the commencement of litigation is valid. *Wade Williams Distribution, Inc. v. American Broadcasting Co., Inc.*, 2005 WL 774275 ( S. D. N. Y. April 5, 2005) (unpublished opinion) (citing *Godinger Silver Art Co. v. Int'l Silver Co.*, 1995 WL 702357, at *4, 37 U. S. P. Q. 2d 1453 (S .D. N. Y. Nov. 28, 1995)).  Courts have also enforced oral assignments which were not reduced to writing until after trial commenced.  *Rotlund Co., Inc. v. Pinnacle Corp.*, 2004 WL 1879983 ( D. Minn. Aug. 20, 2004) (unpublished opinion) (citing *Magnuson v. Video Yesteryear*, 85 F. 3d 1424, 1428 (9th Cir. 1996); *Billy-Bob Teeth, Inc. v. Novelty, Inc.*,329 F. 3d 586, 589-92 (7th Cir. 2003); *Sabroso Pub., Inc. v. Caiman Records America, Inc.*, 143 F. Supp. 2d 224, 227 (D. Puerto Rico 2001); *ERG, Inc. v. Stern,* 1996 WL 131743, at *2 (N.D. Ill. Mar. 11, 1996)(unpublished opinion) (citing *Godinger* , 1995 WL 702357, at *4 and *Infodek*, 830 F. Supp. At 620-21); *Parfums Givenchy, Inc. v. C&C Beauty Sales, Inc.*, 831 F. Supp. 1378, 1384 (C. D. Cal. 1993).

Thus, according to the courts which have considered the question, the fact that the assignment in this case was not executed until after the litigation commenced does not preclude its enforcement in this action.  Therefore, even if Takacs' work for Plaintiff did not satisfy the requirements of "work for hire," she has assigned her rights of ownership in that work to Plaintiff, including the right to pursue the specific infringement claims asserted in this lawsuit.  Accordingly, Plaintiff satisfies the initial element of ownership for purposes of his copyright infringement claims

as to work performed by Takacs.

b.Yuri:

Defendants also contend that Plaintiff is not the owner of the "Old Monkey" copyright because the evidence shows that the work was sculpted by an individual known only as Yuri. Defendants argue that this was not a work for hire, as Yuri was an independent contractor.

Plaintiff does not dispute the fact that, prior to Takacs' employment, Yuri sculpted the animal later used in the "Old Monkey" sculpture series.  Takacs testified that she used the head and face of a monkey sculpted by Yuri when she later worked on sculptures of monkeys.   Plaintiff and Takacs do not know Yuri's last name, have not remained in contact with him, and do not know his current location.

According to Plaintiff, Yuri sculpted the original monkey figure which was later used in the "Old Monkey" series; the original sculpture was a standing monkey  wearing a coat and vest, and holding a candle stick in each in hand. Plaintiff's dep., p. 107.    Yuri was paid in cash, and Plaintiff referred to him as an independent contractor.  Plaintiff's dep., p. 99, lines 6-25.   Although Yuri performed  work at his home rather than in Plaintiff's studio, Plaintiff supplied the tools and clay. *Id.*, lines 23-25; p. 100, lines 18-19; p. 107, lines 1-2.

 Plaintiff made the steel armature for the monkey, and told Yuri what stance and expression he wanted, as well as the details of the clothing.  Plaintiff's dep., p.99, lines 24-25; p. 100, lines 1-3 and 17-23; p. 107.  The armature for the monkey was made of quarter-inch steel with the monkey's legs and arms crooked so that candles can be placed  in the holders extending from the monkey's arms.  *Id.*, p. 108.   Although Yuri worked primarily at his own home, Plaintiff testified that he discussed the work with Yuri each day, and Yuri brought the piece to the studio.  *Id.* at p. 101, lines

1-11.  After Yuri completed the sculpture, Plaintiff made some changes; specifically, he  changed the coat worn by the monkey to add a flare to the bottom, he made the monkey's ears smaller, and he altered the monkey's face because Yuri had made it too fierce.  Plaintiff's dep., p. 101, lines 14-25; p. 102, lines 1-10; p. 107-108.  Plaintiff paid Yuri when the sculpture was completed; Plaintiff was uncertain about the amount, but thinks it was approximately $250, and believes Yuri was paid in cash because Yuri preferred cash payments.  *Id.,* p. 100, lines 4-7.

Takacs testified that, when she worked on sculptures in the "Old Monkey" series,  Plaintiff instructed her to copy the head and face of the monkey sculpted by Yuri.  She was aware that Yuri had worked for Plaintiff, and knew that Plaintiff had paid him for the monkey sculpture.  She also understood that Yuri worked at his home instead of Plaintiff's studio.

The record before the Court shows that, although Plaintiff referred to Yuri as an independent contractor, he considered Yuri's work as work for hire.  Because the parties could not depose Yuri, the factual record regarding his working relationship with Plaintiff is less developed than that involving Takacs.  However, the evidence shows that, as with Takacs, Plaintiff provided the armature for the monkey sculpture, including the pose, and he specified the clothing for the monkey.  Plaintiff  also altered some of Yuri's work .  The record shows that, unlike Takacs, Yuri did not work in the studio; however, Plaintiff supplied his tools and materials, and Yuri regularly consulted with Plaintiff regarding the progress of his work.   Yuri was paid in cash when he completed the sculpture, and it appears that he was paid for the piece he completed rather than being compensated on an hourly basis.

The Court concludes that, given the evidence regarding the working relationship between Yuri and Plaintiff and applying  the agency principles and factors required by *Community,* Yuri's

status was as an employee rather than an independent contractor.  Accordingly, the Court concludes that the work performed by Yuri was work for hire within the meaning of the Copyright Act. Therefore, Plaintiff is the owner of the copyrighted material resulting from that work.

Because the Court has concluded that Plaintiff is the owner of the copyrights which he contends were infringed, Plaintiff has satisfied the ownership element of his infringement claims.

To prevail on his infringement claims, however, Plaintiff must also establish that Defendants copied the designs for the "Old Fox," "Old Monkey," and the "Server" series.

2.  Proof of copying:

To prove copying of copyrighted material, "a plaintiff must typically show substantial similarity between legally protectible elements of the original work and the allegedly infringing work."  *Jacobsen v. Deseret Book Co.*,  287 F.3d 936, 942 -943 (10th Cir. 2002) (citing  *Country Kids* 77 F.3d at 1284). "This is primarily a qualitative rather than a purely quantitative analysis, and must be performed on a case-by-case basis." *Gates,*  9 F.3d at 839 (citation and footnote omitted). To decide whether two works are substantially similar, the Court must determine " 'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.' "*Jacobsen*, 287 F. 3d at 943 (quoting  *Country Kids*, 77 F.3d at 1288). "Substantial similarity is measured by whether an 'ordinary observer,' who is not specifically looking for disparities, would tend to overlook any differences between the works." *La Resolana Architects, PA v. Reno, Inc.*, 555 F. 3d 1171, 1180 (10th Cir. 2009) (quoting *Country Kids*, 77 F. 3d at 1288).

Direct proof of copying is not essential, as a plaintiff "can indirectly prove copying by

establishing that Defendants had access to the copyrighted work and that there are probative similarities between the copyright material and the allegedly copied material." *Country Kids*, 77 F. 3d at 1284 (citations omitted). Access is proven by a plaintiff's evidence that a defendant viewed or had reasonable opportunity to view or copy the protected work. *Jorgensen v. Epic/Sony Records*, 351 F. 3d 46, 53-55 (2d Cir. 2003); *Autoskill*, 994 F.2d at 1489.

In this case, Plaintiff contends that Defendants created designs which constitute copies of his copyrighted works. Specifically, Plaintiff argues that Defendants created and marketed a "Fox Bookend" and a "Fox Server" which are based on his copyrighted "Old Fox" and "Server Series" works. Defendants' access to these designs is based on the undisputed fact that, in 1999, Plaintiff allowed Defendants' representatives to visit his studio and trained them in the methods he utilized to produce the copyrighted designs which were included in the 1999 Agreements granting Defendants' exclusive licenses to manufacture and market certain specific items in these copyrighted designs. The 1999 Agreement for the "Old Fox" series is submitted as Plaintiff's Exhibit 5; the 1999 Agreement for the "Server Series" is submitted as Plaintiff's Exhibit 6. Plaintiff argues that the 1999 Agreements allowed Defendants to utilize only specific designs which were listed in each of the respective Agreements and that the "Fox Bookend" and the "Fox Server" are not included in the authorized list.

Defendants do not dispute that they had direct access to the copyrighted designs in the "Old Fox," "Old Monkey" and "Server Series," nor do they argue that their works are not substantially similar to the copyrighted works. Defendants concede that the 1999 Agreements expressly limited their authority to use only specific items listed in those agreements. Deposition of Gary Smith, Plaintiff's Ex. 9 ("Smith dep."), p. 62, lines 9-11; p. 64, lines 16-19. Nor do Defendants dispute that

17

they manufactured and marketed the "Fox Bookend" and the "Fox Server." *Id.* at p. 64, line 15; p. 120, lines 13-15.  With respect to the "Fox Bookend," Defendants admit that the item is comprised of Plaintiff's original "Old Fox" design; Defendants cut the mold at the torso, and placed the head of the fox on a standard L bracket to create a bookend.  Smith dep., p. 108, lines 6-15.  Defendants do not dispute that the "Old Fox" design they used is copyrighted by Plaintiff and they did not have his permission to manufacture or market the bookends.  *Id.,* p. 111, lines 11-18.  Defendants also admit that they did not pay royalties to Plaintiff based on their sale of the "Fox Bookend." However, they contend he was paid royalties for the "Fox Server."

The 1999 Licensing Agreement for the "Server Series" was limited only to a monkey server and a dog server.   Plaintiff's Exhibits 2 and 8.  Defendants do not dispute this fact, and admit that they utilized the copyrighted designs of the "Old Fox" and "Server Series" to create a design they refer to as the "Fox Server."  Smith dep., p. 64, lines 16-19. The record reflects that Defendants admit they had access to the two designs at issue and that they copied those designs in their "Fox Bookend" and "Fox Server" pieces.  They do not dispute Plaintiff's contention that the designs are substantially similar to Plaintiff's copyrighted items.

Defendants argue, however, that Plaintiff cannot prevail on his copyright infringement claim as to these items because they were authorized to manufacture and market the items.[8] Defendants argue that the evidence establishes they had a  nonexclusive, oral license to manufacture the "Fox Bookend" and that Plaintiff verbally authorized the manufacture of the "Fox Server."

A nonexclusive license may be granted orally, or may even be implied from conduct.  3

---

[8]Defendants also argue that Plaintiff cannot prevail because  he was not the "author" of the designs, asserting their claim that  Susan Takacs and Yuri created these works as independent contractors.  The Court has rejected that argument, and has concluded that Plaintiff is the owner of both the "Old Fox" and "Server Series" copyrights.

Nimmer on Copyright § 10.03[A], at 10-40 (1989).  A copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement.  *Graham v. James,* 144 F. 3d 229, 236 (2d Cir. 1998); *Jacob Maxwell, Inc. v. Veeck*, 110 F. 3d 749, 753 (11th Cir. 1997); *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1338-39 (9th Cir. 1990).

Although a licensee may be capable of breaching contractual obligations imposed on it in a licensing agreement, it cannot be liable for infringing the copyrights covered by that agreement.  *United States Naval Inst. v. Charter Comm., Inc.*, 936 F.2d 692, 695 (2nd Cir. 1991).  Whether a valid and enforceable oral licensing agreement exists requires application of contract rules regarding an oral offer and acceptance; these may be manifested by the conduct of the parties.  *Naimie v. Cytozyme Laboratories, Inc.*, 174 F. 3d 1104, 1111 (10th Cir. 1999).  Whether a binding contract was formed is a mixed question of fact and law.  *Id.*

Defendants contend a binding oral licensing agreement was formed when Defendant Smith spoke to Plaintiff's attorney, Nancy Guttenberg, after Defendants developed a sample of the Fox Bookends.  Smith Dep., p. 110.  According to Smith, one of his employees suggested the bookend, and cut the head off Plaintiff's "Old Fox" mold, mounted it to an L-bracket, and made it into a bookend.  *Id.* at 108.  According to Smith, he sent a sample of the bookend to Ms. Guttenberg, and discussed it with her in a telephone conversation; he proposed that, instead of the 15% royalty paid to Plaintiff on the items covered by the 1999 Agreements, Defendants would pay a 7 ½% royalty because they considered the items to be "half our idea and half of the Huebbe product."  Smith dep., p. 110, lines 12- 25; p. 111, lines 1-10.  According to Smith, Ms. Guttenberg did not expressly reject the idea, but said the parties should "table" the discussion regarding the royalty percentage because,

at the time, the parties were negotiating a possible sale of Plaintiff's business to Defendant OCC. *Id.* Although Defendants do not contend that Ms. Guttenberg authorized them to proceed with manufacturing and marketing the Fox Bookend, they contend that she impliedly consented because she did not expressly object.

In his deposition, Plaintiff testified that Ms. Guttenberg showed him the sample of Defendants' Fox Bookend and asked if he would agree to license it to Defendants. According to Plaintiff, he expressly declined, and instructed her to notify Defendants. Plaintiff's dep., p. 22, lines 15-24. He assumed that she followed his instructions; however, he does not know if she contacted Defendants. *Id.* He did not receive any written communications from Defendants regarding this matter, nor did he see correspondence from Ms. Guttenberg to Defendants. Plaintiff's dep., p. 32, lines 15-25; p. 33, lines 1-3.

The Court concludes that the record contains disputed evidence regarding the existence of an implied oral license regarding the "Fox Bookend." To the extent that the determination depends on the credibility of the witnesses, the issue cannot properly be decided in a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000) (citations omitted). Accordingly, Plaintiff's motion for partial summary judgment on the issue of copyright infringement for the "Old Fox" copyright based on Defendants' manufacture of the "Fox Bookend" must be, and is, denied.

With respect to the "Fox Server," Defendants do not contend that Ms. Guttenberg granted them an oral license. They do not argue that a sample of this item was sent to Ms. Guttenberg or that they discussed with her any request to manufacture it. Instead, Smith testified that he spoke directly with Plaintiff in 2003 regarding a proposed manufacture of a server depicting the "Old Fox"; Smith

testified that Plaintiff thought the head was too small for that purpose, but Smith told him he could

make it larger.   Smith dep., p. 122, lines 7-25; p. 123, lines 1-8.   Plaintiff does not recall these

discussions.   Plaintiff's dep., p. 84, lines 13-16; p. 90, lines 8-11.   Defendants further contend that

they paid royalties to Plaintiff for the sale of the "Fox Server" and that his acceptance of the same

constitutes an implied authorization to manufacture the item.

Whether a verbal authorization or license existed for this item is clearly the subject of a

factual dispute which cannot be resolved in a summary judgment motion.   The credibility of the

witnesses is also at issue in this regard, and their credibility cannot be assessed in a summary

adjudication.   Accordingly, Plaintiff's summary judgment motion on the "Fox Server" copyright

infringement claim must be denied.

The facts on which Plaintiff's infringement claim regarding the "Old Monkey" copyright

depends are unclear.   The argument asserted in his motion is directed at Defendants' use of the "Old

Monkey" design in a "Three Old Monkey Chandelier."   However, Plaintiff has withdrawn his

motion seeking summary judgment on the infringement claim related to the "Three Old Monkey

Chandelier."   There is insufficient evidence in the  record before the Court at this time to grant

summary judgment as to this claim.   Accordingly,  Plaintiff's motion must be denied as to this

infringement claim.

IV.  Breach of the licensing agreements:

In Count II of the Amended Complaint, Plaintiff alleges that Defendants have breached the

1999 Agreements by failing to account to Plaintiff for all sales of products subject to the agreements

and by failing to  pay him all royalties due under the terms of those agreements.   It is undisputed that

each of the 1999 Agreements provides that Defendants shall pay to Plaintiff "a royalty of fifteen

percent (15%) on each and every individual piece manufactured by" Defendants.  Plaintiff's Exs. 5-7.

Plaintiff argues that he fully performed his obligations under the 1999 Agreements covering the "Old Fox," "Server Series," and "Old Monkey" items, and that Defendants breached the 1999 Agreements because they did not pay 15 % of the actual sales price of all items covered by those agreements.  More specifically, Plaintiff contends that Defendants sold the electric sconces at a higher price than was charged for candle holders reflecting the same design; however, Defendants paid Plaintiff a 15% royalty based only on the lower-priced candle holders.

According to Smith, all products sold pursuant to the 1999 Agreements were assigned model numbers.  Smith Dep., pp. 97-100.  He also testified that the model numbers included a designation as to whether the item was a "candle" or an "electric" item.  *Id.*  These designations were not reflected on the royalty statements provided to Plaintiff, and the royalties for all items sold were based on the lower-priced candle holder.  Smith dep., p. 103-04; 139-40.  According to Smith, this procedure was not discussed with Plaintiff.  *Id.* at p. 104, lines 17-24.

Plaintiff argues that Defendants' failure to pay a 15% royalty on the actual sales price of each item constitutes a breach of the 1999 Agreements.  Furthermore, he contends that, if the Fox Bookend products are determined to have been covered by the 1999 Agreements, he is entitled to royalties on those items; Defendants admit that no royalties have been paid on the Fox Bookend. Smith dep., p. 113, lines 19-24.

Defendants assert several arguments in defense of these claims.  Initially, they contend that they are not obligated to comply with the 1999 Agreements because Plaintiff was not the owner of the copyrights for the items covered by those agreements.  In fact, Defendants allege that Plaintiff

22

misrepresented the facts and committed fraud by falsely representing that he was the copyright owner. Defendants' arguments are without merit, as the Court has determined that Plaintiff is the owner of the copyrights at issue.

Defendants next argue that the royalty provisions of the 1999 Agreements are ambiguous because they do not specify the manner in which the 15% royalty will be calculated. As Defendants correctly note, the agreements do not expressly state that royalties are owed on the sales price of an item. Defendants argue that they determined the royalty should be calculated on the "price of the base sculpture as copyrighted, rather than the price of the functional lamp." Response brief, p. 24. Defendants do not, however, point to any language in the agreements which supports this interpretation. Defendants also argue that the ambiguity in the agreements must be construed against Plaintiff because it is undisputed that his attorney, Ms. Guttenberg, drafted the agreements. Additionally, Defendants argue that Plaintiff accepted royalty payments for a period of five years without complaining about the manner in which the royalties were calculated; they contend he is estopped from asserting this claim.

Defendants' estoppel argument overlooks the fact that Plaintiff has raised an issue regarding the accountings required under the 1999 Agreements, and there appears to be a question as to whether Defendants fully accounted for sales and royalties. Furthermore, from a review of the accounting information in the record, the manner in which the royalties were calculated is unclear. *See* Defendants' Ex. 2. Therefore, this contention raises a factual dispute which cannot be resolved at the summary judgment stage.[9]

---

[9]For the same reason, Defendants' contention that the statute of limitations has expired on some of the sales at issue cannot properly be resolved at this time. The manner in which Defendants accounted to Plaintiff and the information provided to him are not clear from the record; thus, the date on which Plaintiff could reasonably have learned of the possible underpayment of royalties cannot be determined.

The parties' arguments reflect that there is a dispute regarding the manner in which they interpreted the 1999 Agreements' royalty payment provisions. The Court has some doubts about the propriety of Defendants' assumption that they could pay royalties based on a method they selected, as Smith admits that he never discussed his interpretation of the agreements with Ms. Guttenberg or with Plaintiff.   Smith dep., p. 104, lines 2-24.   In fact, the list of items attached to Ms. Guttenberg's 1999 correspondence with Defendants reflects that, with respect to the items to be covered by the 1999 Agreements, "electric" items and "candle" items are listed separately. *See* June 7, 1999 letter to Smith from Guttenberg, submitted as Defendants' Ex. 2.  Although the Court has reservations regarding Defendants' arguments, it cannot weigh the evidence or assess credibility at the summary judgment stage – those issues and must be reserved for trial.

Accordingly, the Court concludes that material fact disputes preclude granting  Plaintiff's summary judgment motion as to his Count II claim alleging breach of the 1999 Agreements based on the alleged underpayment of royalties.[10]   The motion is denied.

V. Conclusion:

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment [Doc. No. 100] is GRANTED in part and DENIED in part.  The Motion is GRANTED to the extent that Plaintiff seeks a determination that he is the owner of the copyrights at issue and that Defendants  copied the three designs which are the subject of the Motion. It is DENIED on the issue of infringement, as material factual disputes preclude judgment.  With respect to Plaintiff's Count II breach of licensing agreements claim, the Motion is also DENIED because there are material factual disputes regarding

---

[10]The Court need not address the parties' dispute regarding  whether New York or Oklahoma law governs this claim; the Court concludes that such dispute is immaterial because both states apply the same principles of contract construction.  In fact, the parties' arguments stating these principles are essentially the same; the only difference is that Plaintiff cites New York decisions, while Defendants cite Oklahoma  cases.

that claim.

IT IS SO ORDERED this_30th___ day of September, 2009.


_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE